THE HONORABLE BENJAMIN H. SETTLE

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

8

CHARLES GABERTAN, individually and
on behalf of all others similarly situated,

9

*Plaintiff,*

10

11    vs.

12    WALMART, INC.,

13    *Defendant.*

Case No. 3:20-cv-05520-BHS (lead case)

**CONSOLIDATED CLASS ACTIONS**

14

15    CHARLES GABERTAN, individually and
on behalf of all others similarly situated,

16    *Plaintiff,*

17    vs.

18    WALMART, INC.,

19    *Defendant.*

20

Case No. 3:20-cv-05032-BHS (closed)

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT**

NOTE ON MOTION CALENDAR:
February 12, 2021

21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………………..5

II.   PROCEDURAL BACKGROUD………………………………………………7

III.  FACTS…………………………………………………………………………8

IV.   ARGUMENT………………………………………………………………...8

    A.  Plaintiff was Permitted to File his State Court Action and the Issue is now Moot as a Result of the Court's Consolidation of the Pending Cases…………….……………9

    B.  Plaintiff Sufficiently Alleges a Claim Under the CEMA…………………………...13

    C.  Defendant is not Entitled to Sanctions……………………………………….........19

V.    CONCLUSION………………………………………………………………..20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Abhari v. Victory Park Cap. Advisors, Inc.*,
   2020 U.S. Dist. LEXIS 247258 (C.D. Cal. Sep. 17, 2020)....................... 12

*Adams v. California Dept. of Health Services*,
   487 F.3d 684 (9th Cir. 2007) ........................................................... 5, 9, 11

*Alleman v. Yellowbook, Inc.*, No.
   2013 U.S. Dist. LEXIS 127212 (S.D. Ill. Sept. 6, 2013)....................... 15

*Anderson v. United Stationers Supply Co.*
   1998 U.S. App. LEXIS 7596 (9th Cir. Apr. 16, 1998) .......................... 19

*Beckerley v. Alorica, Inc.*,
   2014 WL 4670229 (C.D. Cal. Sept. 17, 2014) ....................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................ 18

*Britz Fertilizers, Inc. v. Bayer Corp.*,
   2008 U.S. Dist. LEXIS 8356 (E.D. Cal. Feb. 5, 2008)............................ 11

*Brooke v. Aju Hotel Silicon Valley LLC*,
   2019 U.S. Dist. LEXIS 220035 (N.D. Cal. Dec. 23, 2019).................... 10

*Chapel I*,
   2011 U.S. Dist. LEXIS 12179 (W.D. Wash. Feb. 8, 2011) ...................... 9

*Chesbro v. Best Buy Stores, L.P.*,
   697 F.3d 1230 (9th Cir. 2012).……………………………………….......13, 14, 15

*Chinitz v. NRT West, Inc.*,
   2019 U.S. Dist. LEXIS 27134 (N.D. Cal. Feb. 20, 2019) ...................... 14

*Consol. Res., Inc. v. Dro Barite, LLC (In re Don Rose Oil, Inc.)*,
   614 B.R. 358 (Bankr. E.D. Cal. 2020)................................................... 10

*Diaz v. Sun-Maid Growers*,
   2019 U.S. Dist. LEXIS 129839 (E.D. Cal. Aug. 1, 2019)....................... 11

*Facebook Inc. v. Duguid,*
  No. 19-511 (July 9, 2020) ........................................................................... 5

*Flores v. Access Ins. Co.,*
  2017 U.S. Dist. LEXIS 36486 (C.D. Cal. Mar. 13, 2017) ........................ 16

*Garcia v. NRI USA, LLC,*
  2018 U.S. Dist. LEXIS 85059 (C.D. Cal. May 21, 2018) .......................... 9

*Gragg v. Orange Cab Co.,*
  2013 U.S. Dist. LEXIS 7474 (W.D. Wash. Jan. 17, 2013) ................ 6, 12, 18

*Gordon v. Robinhood Fin. Ltd. Liab. Co.,*
  2020 U.S. Dist. LEXIS 106229 (E.D. Wash. June 17, 2020) .................... 18

*Henderson v. Bonaventura,*
  649 F. App'x 639 (9th Cir. 2016) ............................................................ 5, 9

*Hickey v. Voxernet LLC,*
  887 F. Supp. 2d 1125 (W.D. Wash. 2012) ............................................. 7, 12

*Horner v. Select Portfolio Servicing,*
  2012 U.S. Dist. LEXIS 135681 (E.D. Cal. Sep. 20, 2012) ....................... 11

*Hyytinen v. Morhous,*
  2015 U.S. Dist. LEXIS 26654 (W.D. Wash. Mar. 3, 2015) ................... 6, 19

*Inman v. Bank of Am.,*
  2014 U.S. Dist. LEXIS 159965 (C.D. Cal. Nov. 13, 2014) ....................... 19

*Irving v. AMTRAK,*
  2015 U.S. Dist. LEXIS 4023 (W.D. Wash. Jan. 12, 2015) ..................... 6, 19

*Katz v. Gerardi,*
  655 F.3d 1212 (10th Cir. 2011) ................................................................ 10

*Last Ounce of Courage,*
  788 F.3d 814 (8th Cir. 2015) .................................................................... 15

*Leonard v. Stemtech Int'l, Inc.,*
  2012 U.S. Dist. LEXIS 120525 (D. Del. Aug. 24, 2012) .......................... 10

*Mendoza v. Amalgamated Transit Unio Int'l,*
  2019 U.S. Dist. LEXIS 230606 (D. Nev. June 24, 2019) ...................... 9, 10

*Meyer v. Bebe Stores, Inc.*,
  2015 U.S. Dist. LEXIS 12060 (N.D. Cal. Feb. 2, 2015) ........................................ 16

*Noel v. Hall*,
  341 F.3d 1148 (9th Cir. 2003) ............................................................................. 9, 11

*Rutledge v. Ariz. Bd. of Regents*,
  859 F.2d 732 (9th Cir. 1988) .................................................................................. 9

*Sanzaro v. Ardiente Homeowners Ass'n LLC*,
  513 F. App'x 646 (9th Cir. 2013) ........................................................................... 9

*T.K. v. Frederick David Stanley*,
  Case No. 3:16-cv-05506-BHS (W.D. Wash. Oct. 11, 2016) .................................. 10

*Toney v. Quality Res., Inc.*,
  75 F. Supp. 3d 727 (N.D. Ill. 2014). ..................................................................... 17

*Unigen Pharm., Inc. v. Walgreen Co.*,
  2008 U.S. Dist. LEXIS 126436 (W.D. Wash. July 3, 2008) ................................. 19

*Walton v. Eaton Corp.*,
  563 F.2d 66, 71 (3rd Cir. 1977) ............................................................................ 11

*Warren v. United States*,
  1993 U.S. App. LEXIS 18389 (9th Cir. July 14, 1993)........................................ 10

*Williams v. Dep't of Corr.*,
  2013 U.S. Dist. LEXIS 91543 (W.D. Wash. June 27, 2013)................................ 20

*Wright v. LYFT, Inc.*,
  2016 U.S. Dist. LEXIS 195086 (W.D. Wash. Apr. 15, 2016)................................ 17

1

## I.  <u>INTRODUCTION</u>

2   On at least five separate occasions, the Ninth Circuit has indicated that a state action that

3   potentially overlaps with a pending federal case does not violate the claim-splitting doctrine.  *See,*

4   *e.g., Henderson v. Bonaventura*, 649 F. App'x 639 (9th Cir. 2016) ("The district court abused its

5   discretion in applying the anti-claim-splitting doctrine….Here, Henderson filed one complaint in

6   state court and another in federal court.").  Notwithstanding, Defendant removed Plaintiff's

7   properly filed claim under the Washington Commercial Electronic Mail Act ("CEMA") and asks

8   this Court for harsh remedies, including dismissal with prejudice and an award of sanctions,

9   accusing Plaintiff of "vexatious" litigation when it is the one that has stonewalled[1] Plaintiff's

10  federal action under the Telephone Consumer Protection Act ("TCPA") for over eight months.

11  Plaintiff was within his rights to file his CEMA claim in state court, and Defendant should

12  not be rewarded with severe sanctions for an issue it created, particularly where the issue is now

13  moot as a result of this Court's consolidation order, which resulted in the closing of the removed

14  CEMA action and consolidation with Plaintiff's TCPA case.  *See Adams v. California Dept. of*

15  *Health Services*, 487 F.3d 684, 688 (9th Cir. 2007) ("After weighing the equities of the case, the

16  district court may exercise its discretion to dismiss a duplicative, later-filed action, to stay that

17  action pending resolution of the previously filed action, to enjoin the parties from proceeding with

18  it, **or to consolidate both actions**.") (emphasis supplied).

19  The undersigned attempted to confer with Defendant's counsel on these issues, but

20  Defendant's counsel will only agree to dismissal with prejudice and sanctions.  The reason is

21  obvious: Defendant seeks to seize on a technical misapplication of the claim-splitting doctrine –

22

23  [1] In Plaintiff's TCPA action, Defendant (1) sought a stay pending a decision in *Facebook Inc. v. Duguid*, No. 19-511 (July 9, 2020), which was denied; (2) refused to participate in a Rule 26(f) conference until denial of its motion to stay; (3) failed to timely serve its initial disclosures, and when it did, served incomplete and generic disclosures and no documents; (4) filed (and subsequently withdrew) a motion for protective order based on an arbitration motion that it never filed; (5) moved for reconsideration of the denial of its stay order; and (6) refuses to respond to discovery based on the arbitration motion it never filed, and its motion for reconsideration, which resulted in Plaintiff having to move to compel.

24

25

26

27  ───────────────────────────────

28

which again is now moot as a result of consolidation of the cases – because it has no defense to Plaintiff's CEMA claim, which prohibits the unsolicited commercial electronic text message at issue that Defendant mass transmitted to over **10,000 Washington residents**,[2] despite its claim that this was a targeted "informational" campaign.

In sum, dismissal with prejudice and sanctions are not warranted here, particularly where Plaintiff was not denied leave to amend in his TCPA case and did not seek to circumvent a scheduling order as one has not yet been entered in the TCPA case.  This Court's "comparable" cases cited by Defendant serve to undercut its argument and further demonstrate why sanctions are not warranted. *See Hyytinen v. Morhous*, No. 14-5537, 2015 U.S. Dist. LEXIS 26654, at *10 (W.D. Wash. Mar. 3, 2015) (Settle, J.) (granting uncontested motion for sanctions pursuant to doctrine of res judicata where plaintiff filed identical lawsuit after summary judgment was granted against him in first action); *Irving v. AMTRAK*, No. C13-5713 BHS, 2015 U.S. Dist. LEXIS 4023 (W.D. Wash. Jan. 12, 2015) (Settle, J.) (denying motion for fees where there was no evidence that plaintiff's counsel acted in bad faith).  No such conduct has occurred here and if this Court believes that consolidation has not mooted the issue, then it should order Plaintiff to amend his TCPA complaint to include the CEMA claim. No harm would result to Defendant given that has refused to participate in discovery for over eight months and, thus, the case is procedurally at its early stages.

Lastly, with respect to Defendant's Rule 12(b)(6) motion, Defendant primarily relies on a case that has since been rejected by the Ninth Circuit, while also ignoring cases from this Circuit that support Plaintiff's claim that the mass transmitted text message sent by Defendant promoting its curbside pickup and delivery services is a commercial electronic text message.  *See Gragg v.*

---

[2] Shortly after Defendant's removal of the CEMA action, the undersigned conferred with counsel for Defendant with respect to a potential motion to remand.  During the course of conferring, Defendant's counsel disclosed that the subject text message had been sent to <u>over</u> 10,000 residents in Washington. Defendant has since provided a declaration confirming the number of Class members.

*Orange Cab Co.*, No. C12-0576RSL, 2013 U.S. Dist. LEXIS 7474, at *12 (W.D. Wash. Jan. 17, 2013) ("CEMA prohibits text messages 'sent to promote real property, goods, or services for sale or lease.'….The Ninth Circuit has determined that, contrary to the holding in *Hickey*, a direct and immediate sale need not be in the offing to trigger the WADAD. The Court finds that the same analysis should apply under CEMA.").

## II.   PROCEDURAL BACKGROUND

On June 1, 2020, Plaintiff his TCPA class action claims.  [DE 1].  Defendant responded to Plaintiff's TCPA Complaint with a Motion to Stay pending resolution of a Supreme Court case that, notably, will have no impact on Plaintiff's CEMA claims.  [DE 23].  On August 31, 2020, this Court denied Defendant's Motion to Stay. [DE 32].  On September 14, 2020, Defendant filed a Motion to Dismiss arguing in part that this Court lacked jurisdiction over the case, and also requesting for this Court to reconsider denial of the stay. [DE 35].  On September 30, 2020, Plaintiff amended his Complaint as a matter of course pursuant to Rule 15(a)(1)(B).  [DE 38].  On October 21, 2020, Defendant renewed its Motion to Dismiss. [DE 44]. The Motion to Dismiss has been fully briefed and remains pending resolution by the Court.  A scheduling order has not been entered in the TCPA action and no trial date has been set. As discussed above, Defendant refuses to participate in discovery in the TCPA action, which has resulted in Plaintiff's filing of a Motion to Compel.  [DE 53].  Plaintiff has <u>not</u> sought or been denied leave to amend his Complaint and there is presently no deadline to amend.

On December 18, 2020, Plaintiff filed his CEMA class action in the Superior Court of Pierce County.  Defendant removed the action on January 12, 2021.  On January 19, 2021, Defendant filed the instant Motion to Dismiss seeking dismissal for improper claim-splitting and for failure to state a claim under CEMA. On January 22, 2021, this Court entered an order consolidating the CEMA action with Plaintiff's TCPA case and closed the removed CEMA case. On January 27, 2021, the undersigned conferred with counsel for Defendant on the claim-splitting component of Defendant's Motion to Dismiss, providing counsel with Ninth Circuit precedent

which holds that this Court's decision to consolidate the pending cases moots Plaintiff's purported improper claim-splitting.  In response, on February 1, 2021, Defendant's counsel indicated that it would not be withdrawing the Motion to Dismiss.

### III.   FACTS

On or about April 7, 2020, Defendant initiated the transmission of the following unsolicited commercial electronic text message to Plaintiff's cellular telephone number:

> **WalmartRX – Are you 60+, high-risk, self-quarantining, or have COVID-19 symptoms? Use curbside pickup or have your Rx mailed. More info https://bit.ly/wmpharm**

Compl. at ¶13.

Plaintiff alleges that the purpose of the message was to advertise and promote Defendant's curbside and delivery services.  *Id*. at ¶14.  Additionally, the link contained in the message is a link to Defendant's website, where "Defendant promotes the availability of its pharmacies' hours and available services, including drive-thru, pick-up and delivery services….The website also contains a link to Defendant's general website, where it advertises and promotes a wide array of products and services."  *Id*. at ¶15.  Plaintiff did not consent to Defendant's commercial electronic communication and, therefore, he seeks damages on behalf of himself and all others similarly situated under the CEMA.

Plaintiff alleged on information and belief that the same message had been transmitted by Defendant to "hundreds and possibly thousands of Washington residents without first obtaining the recipients' clean and affirmative consent to receive such messages.  *Id*. at ¶18.  However, contrary to Defendant's representations that the message was sent as a targeted informational message to Defendant's consumers, Defendant's counsel has conceded that the same generic message was sent to over 10,000 Washington residents who are members of the putative class.

IV.   **ARGUMENT**

### A. Plaintiff was Permitted to File his State Court Action and the Issue is now Moot as a Result of the Court's Consolidation of the Pending Cases.

Preliminarily, Plaintiff has not engaged in bad faith or vexatious litigation as he was permitted to file his CEMA action in state court notwithstanding the claim-splitting rule. *See Henderson*, 649 F. App'x 639 (9th Cir. 2016) ("The district court abused its discretion in applying the anti-claim-splitting…Here, Henderson filed one complaint in state court and another in federal court."); *Rutledge v. Ariz. Bd. of Regents*, 859 F.2d 732, 736 (9th Cir. 1988) (Plaintiff "chose to file parallel state and federal actions simultaneously. There was concurrent jurisdiction and it was permissible for him to do so."); *Sanzaro v. Ardiente Homeowners Ass'n LLC*, 513 F. App'x 646, 647 (9th Cir. 2013) ("Dismissal of the Sanzaros' FHA claim as duplicative of a state court action was improper because the other action is not in the same court as the present action and does not include the Sanzaros' FHA claim.") (citing *Adams,* 487 F.3d at 688-89 (a suit is duplicative, and therefore constitutes impermissible claim splitting, if the court, causes of action, relief sought, and parties are the same)); *Garcia v. NRI USA, LLC*, No. 2:17-CV-08355-ODW-GJS, 2018 U.S. Dist. LEXIS 85059 (C.D. Cal. May 21, 2018) ("The Ninth Circuit has recognized the long-settled rule that 'overlapping or even identical federal and state court litigation may proceed simultaneously, limited only by doctrines of abstention and comity . . .') (quoting *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003)).[3]

Defendant created the claim-splitting issue on which it seeks to capitalize by removing Plaintiff's properly filed state action. Notwithstanding, this Court has mooted the issue by deciding to consolidate the cases. *See Adams*, 487 F.3d at 688 ("After weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay

---

[3] In *Chapel v. Recontrust Co., N.A.*, a case on which Defendant primarily relies, the plaintiff, unlike Plaintiff here, filed two actions in <u>federal court</u>. Thus, this Court found that the claim-splitting doctrine should be applied but even under those circumstances that "it would be most efficient to have Chapel file all of his claims relating to the foreclosure of the subject property in one case, i.e., *Chapel I.*" No. C10-5846BHS 2011 U.S. Dist. LEXIS 12179, at *6 (W.D. Wash. Feb. 8, 2011).

that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions."); *see also Mendoza v. Amalgamated Transit Unio Int'l*, No. 2:18-cv-00959-JCM-CWH, 2019 U.S. Dist. LEXIS 230606, at *9 (D. Nev. June 24, 2019) ("Defendants argue that plaintiff impermissibly filed *Mendoza II*, because he was denied leave to amend in *Mendoza I*. However, the court has since consolidated *Mendoza I* into *Mendoza II* and defendants' contentions of claim-splitting may no longer be at issue."); *Brooke v. Aju Hotel Silicon Valley LLC*, No. 19-cv-05559-SVK, 2019 U.S. Dist. LEXIS 220035, at *5 (N.D. Cal. Dec. 23, 2019) (denying defendant's request for dismissal on the grounds of claim-splitting and holding: "Considering the posture of both cases and the parties' apparent agreement that the cases involve common questions of fact and law, the Court finds that consolidation of this case with the '411 case is appropriate."); *Leonard v. Stemtech Int'l, Inc.*, No. 12-86-LPS-CJB, 2012 U.S. Dist. LEXIS 120525, at *39 (D. Del. Aug. 24, 2012) ("However, given the unique circumstances present here, I find that it would instead be appropriate to consolidate the instant case with *Leonard I*."); *Warren v. United States*, No. 92-35558, 1993 U.S. App. LEXIS 18389, n.3 (9th Cir. July 14, 1993) ("When the district court consolidated the three cases, they lost their separate identities and became a single action, CV-90-766. 9 Wright & Miller, *Federal Practice and Procedure* § 2382 (1971).").

As this Court has observed, "the Court's underlying authority to prohibit 'claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments.'" *T.K. v. Frederick David Stanley,* Case No. 3:16-cv-05506-BHS, Dkt. 22 at 8-10 (W.D. Wash. Oct. 11, 2016) (Settle, J.) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011)) (citing *Beckerley v. Alorica, Inc.*, SACV 14-0836-DOC, 2014 WL 4670229, at *4 (C.D. Cal. Sept. 17, 2014) ("The rule against claim splitting is rooted in the district court's broad discretion to control its own docket as well as the court's interests in judicial economy and efficiency.").  Furthermore, "when considering the appropriate remedy for claim splitting, the court should neither expand…nor contract the procedural rights that the plaintiff would have otherwise enjoyed." *Consol. Res., Inc. v. Dro Barite, LLC (In re Don*

1   *Rose Oil, Inc.)*, 614 B.R. 358, 370 (Bankr. E.D. Cal. 2020) (citing *Walton v. Eaton Corp.*, 563 F.2d

2   66, 71 (3rd Cir. 1977); Restatement (Second) of Judgments § 26).

3        Consistent with this mandate, courts faced with a claim-splitting issue will consolidated

4   (as this Court has already done) and/or order the plaintiff to amend his first filed complaint to

5   include all causes of action.  *See Horner v. Select Portfolio Servicing*, 2012 U.S. Dist. LEXIS

6   135681, at *6 (E.D. Cal. Sep. 20, 2012) ("The equities of this case clearly do not call for dismissal

7   of either case with prejudice. However, plaintiffs should have the opportunity to do what they

8   wanted to do in the first place, namely, amend their original complaint to add Deutsche Bank, and

9   if they wish, the new federal cause of action contained in the later-filed lawsuit. This can be

10  accomplished through consolidation or simply granting plaintiffs leave to amend the original

11  complaint. The simpler path appears to be granting leave to amend."); *Britz Fertilizers, Inc. v.*

12  *Bayer Corp.*, No. 1:07-cv-00846-OWW-SMS, 2008 U.S. Dist. LEXIS 8356, at *46 (E.D. Cal. Feb.

13  5, 2008) ("To that end, *Britz   II* is consolidated with *Britz   I.  See Adams*, 487 F.3d at

14  692 (explaining that a district court may dispense with a duplicative complaint by dismissing the

15  later-filed complaint with or without prejudice, by staying or enjoining the later-filed proceeding,

16  or by consolidating the two actions). Britz shall amend the original complaint to succinctly state

17  all surviving claims and remedies sought."); *Diaz v. Sun-Maid Growers*, No. 1:19-CV-00425-LJO-

18  SKO, 2019 U.S. Dist. LEXIS 129839 (E.D. Cal. Aug. 1, 2019) ("The Court has found that granting

19  Plaintiff leave to amend his complaint is appropriate, and with that leave, Plaintiff indicates the

20  potential federal claim is removed.").

21       Moreover, absent a showing of bad faith or egregious conduct by a plaintiff – none of

22  which exist here – dismissal of an action is not warranted.  *See Diaz v. Sun-Maid Growers*, No.

23  1:19-CV-00425-LJO-SKO, 2019 U.S. Dist. LEXIS 129839, at *14 (E.D. Cal. Aug. 1, 2019) (citing

24  *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003) (recognizing that "overlapping or even identical

25  federal and state court litigation may proceed simultaneously, limited only by doctrines of

26  abstention and comity")).  Instead, consolidation is the proper remedy, and if there is any remaining

27

1    issue, consistent with the above cited case law, this Court should order Plaintiff to amend his TCPA

2    complaint to include the CEMA cause.  *See Abhari v. Victory Park Cap. Advisors, Inc.*, No. CV

3    20-05734 PA (MAAx), 2020 U.S. Dist. LEXIS 247258, at *16 (C.D. Cal. Sep. 17, 2020) ("In the

4    interest of judicial economy and efficiency, the Court orders that, should Plaintiffs chose to amend

5    their Complaint, Plaintiffs shall consolidate all of Plaintiffs' grievances into one amended

6    complaint, and the Court will dismiss the second action.").

7           In sum, Plaintiff did not engage in bad faith or vexatious conduct.  He was permitted to file

8    his state court action and did not do so to circumvent any order of this Court.  Indeed, Plaintiff has

9    never been denied leave to amend in the TCPA action and there is no scheduling order in place

10   setting a deadline for the amendment of pleadings.  Given that this Court has already ruled on the

11   matter by consolidating the cases, any remaining issue that Defendant may claim exists would

12   most efficiently be handled by ordering Plaintiff to file an amended consolidated complaint, not

13   by dismissing the CEMA action and denying Plaintiff and the Class members their day in court.

14                    **B.  Plaintiff Sufficiently Alleges a Claim Under the CEMA.**

15          The CEMA provides that "[n]o person conducting business in the state may initiate or assist

16   in the transmission of an electronic commercial text message to a telephone number assigned to a

17   Washington resident for cellular telephone or pager service . . . ."  RCW 19.190.060(1). The statute

18   defines "commercial electronic text message" as a message "sent to promote real property, goods,

19   or services for sale or lease."  RCW 19.190.010(3).  The only issue raised by Defendant is whether

20   the subject text message is a commercial electronic text message prohibited by the statute.  On that

21   issue, Defendant cites *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125 (W.D. Wash. 2012), for the

22   purported rule that a commercial electronic text message must explicitly promote the sale or lease

23   of a product to be considered a commercial electronic text. Mot. at pg. 5.  However, the "Ninth

24   Circuit has determined that, contrary to the holding in *Hickey*, a direct and immediate sale need

25   not be in the offing [sic] to trigger the….CEMA."  *Gragg v. Orange Cab Co.*, No. C12-0576RSL,

26

27   _____

28

2013 U.S. Dist. LEXIS 7474, at *12 (W.D. Wash. Jan. 17, 2013) (citing *Chesbro v. Best Buy Stores, L.P.*, 697 F.3d 1230 (9th Cir. 2012)).

In 2003, the FCC issued guidance concerning dual purpose calls such as the one sent by Defendant, stating:

> The so-called "dual purpose" calls described in the record—calls from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers—would, in most instances, constitute "unsolicited advertisements," regardless of the customer service element to the call. The Commission explained in the 2002 Notice that such messages may inquire about a customer's satisfaction with a product already purchased, **but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement**.

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14098 ¶ 142 (July 3, 2003) (emphasis added).

Subsequently, in 2012, the FCC clarified – in the context of consumer opt-out requests – that

> texts that encourage consumers to call or otherwise contact the sender in an attempt to market, including such texts that, while neutral on their face, lead to a marketing message if the consumer contacts the sender, are likely beyond the scope of the consumer's prior consent.

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 27 FCC Rcd. 15391, at ¶ 12 (Nov. 29, 2012).

Consistent with this guidance, the Ninth Circuit has held: "the FCC has determined that so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component, are prohibited." *Chesbro*, 705 F.3d at 917 (citing *2003 Report*

*and Order* at 14097-98 ¶¶ 140-142).   The Ninth Circuit explained that in applying the dual purpose rule, courts must focus "not on the caller's characterization of the call, but on the purpose of the message." *Id.* at 918. It elaborated that courts should approach the analysis "with a measure of common sense," keeping in mind that "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context," and that "[a]ny additional information provided in the calls does not inoculate them." *Id.* The logic behind examining intent is sound: if the analysis relied solely on the face of the communication, companies could easily circumvent the TCPA's rules by using "informational" communications as a hook to then solicit additional business.  This would effectively eviscerate the TCPA's express written consent requirement.

Courts evaluating calls that contain a marketing component have found them to be dual purpose calls for which express written consent is required.   For example, in *Chesbro*, the defendant called the plaintiff with a prerecorded message to inform him that his "Best Buy Reward Zone" certificates were about to expire.   705 F.3d at 916.  Subsequently, the defendant sent a second prerecorded messages to the plaintiff to notify him of changes to the rewards program and to encourage the plaintiff to "go to MyRewardZone.com for details and to update your membership."  *Id.* at 916-17.  In rejecting the defendant's argument that the calls were not telemarketing, the Ninth Circuit held:

> The robot-calls urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the RZP, and thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy.

*Id.* at 918.

In *Chinitz v. NRT West, Inc*, the defendants used prerecorded messages that simply stated that there "was a bad connection and someone would call [the recipient] back."  No. 18-cv-06100-NC, 2019 U.S. Dist. LEXIS 27134, at *6 (N.D. Cal. Feb. 20, 2019).  Thereafter, defendant's

employee would follow up and attempt to sell their real estate brokerage services.  *Id*.  Defendant argued that the court should limit its dual-purpose analysis to the content of the pre-recorded call itself.  *Id* at *6-7.  The court rejected this argument, and stated that "[47 C.F.R. § 64.1200(a)(2)] makes clear that the TCPA reaches prerecorded messages that do not constitute advertisements or telemarketing themselves."   *Id.*   Thus, the initial pre-recorded call "'introduce[d]' the telemarketing call and is prohibited under the TCPA." *Id.* at *7.

Similarly, in *Golan v. Veritas Entm't, LLC*, the defendants engaged in a national telemarketing campaign to promote their movie, *Last Ounce of Courage*.  788 F.3d 814, 817 (8th Cir. 2015).  They prepared two pre-recorded messages, one that was played if the recipient answered his/her phone, and another which was left as a voicemail if the phone was not answered. *Id*.  The plaintiffs did not answer their phones and consequently received the following pre-recorded message on their voicemail: "Liberty. This is a public survey call. We may call back later." *Id*. at 816.  In granting the defendant's motion to dismiss, the district court concluded that the messages received by the plaintiffs did not contain an advertisement and did not constitute telemarketing.  *Id*. at 818.  On appeal, the Eighth Circuit reversed, rejecting the defendants' argument that it should "consider only the content of the calls in determining whether they were 'telemarketing.'"  *Id*. at 820 (citing *Alleman v. Yellowbook, Inc.*, No. 12-CV-1300-DRH-PMF, 2013 U.S. Dist. LEXIS 127212 (S.D. Ill. Sept. 6, 2013)).

The Eighth Circuit reasoned that "[n]either the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id*. (citing *Chesbro*, 705 F.3d at 918).  The Eighth Circuit further held:

> Here, the context of the calls indicates that they were initiated for the purpose of promoting Last Ounce of Courage….Although the campaign appeared to survey whether recipients had "traditional American values," [the producers of the movie] were "more concerned with getting viewers to see Last Ounce of Courage than gathering information about them."…. Since the calls were initiated and transmitted to the Golans in order to promote Last Ounce of

> Courage, they qualified as "telemarketing" even though the messages never referenced the film.

*Golan*, 788 F.3d at 820.

In *Flores v. Access Ins. Co.*, the defendant, an auto insurance company, sent the following text message to the plaintiff's cellular telephone: "Your Access Auto Insurance policy cancels 01/26/2015. To avoid cancellation, make a payment at [this website]. Reply STOP to Opt-out." No. 2:15-cv-02883-CAS(AGRx), 2017 U.S. Dist. LEXIS 36486, at *2 (C.D. Cal. Mar. 13, 2017). The plaintiff alleged that the defendant violated the TCPA by sending him a text message without his express written consent. *Id*. at *20. The defendant argued that it did not need written consent because its text message did not constitute telemarketing. *Id*. In rejecting the defendant's argument, the court sided with the plaintiff, holding:

> that defendant's communications had two purposes: (1) to alert plaintiff to the expiration of his auto insurance policy; and (2) to encourage plaintiff to renew his policy. That is, the communications had both informational and telemarketing purposes because plaintiff was informed about the status of his policy and was encouraged to purchase services from defendant.

*Id*. at *21 (internal citation omitted). Since the defendant failed to obtain express written consent, the court concluded that the plaintiff had adequately stated a claim for violation of the TCPA.

In *Meyer v. Bebe Stores, Inc.*, the defendant sent the following text message to the plaintiff: "bebe: 'Get on the list! Reply YES to confirm opt-in. 10% OFF reg-price in-store/online. Restrictions apply. 2msg/mo, w/latest offers. Msg & data rates may apply.'" No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, at *3 (N.D. Cal. Feb. 2, 2015). The plaintiff alleged that the defendant violated the TCPA because it did not have her express written consent to send her text messages. *Id*. The defendant countered that its message was "merely an informational or administrative message," for which it only needed express consent. *Id*. at *11. The court agreed with the plaintiff, holding that the text message at issue was an impermissible dual purpose message that sought to encourage a future purchase. *Id*. The court was not persuaded by the fact

that the message served a dual administrative function (opt-in), holding that express written consent was required because of the marketing component of the message (encouraging future purchases). *Id*. at *12.

Lastly, in *Toney v. Quality Res., Inc.*, the plaintiff provided her cellular telephone number to the defendant in connection with the purchase of children's shoes. 75 F. Supp. 3d 727, 731-32 (N.D. Ill. 2014). Subsequently, the defendant called the plaintiff's cellular telephone with an automated dialer to verify the plaintiff's address. *Id*. at 732. During that call, the defendant's agent tried to sell the plaintiff a membership in defendant's "Budget Savers" program. *Id*. The plaintiff filed suit under the TCPA, claiming that the defendant contacted her without her express written consent. *Id*. at 731. The defendant disputed plaintiff's characterization of the call, claiming that it was simply a "confirmation telephone call." *Id*. at 737. The court ultimately agreed with the plaintiff, holding that the call was a dual purpose call that it deemed a "sales call," because defendant, in addition to verifying plaintiff's information, attempted to sell her the "Budget Savers" program. *Id*. at 738.

Cases dealing with CEMA claims have reached the same conclusion. For example, in *Wright v. LYFT, Inc.*, the defendant sent plaintiff the following text message: "Jo Ann C. sent you a free Lyft ride worth $25. Claim it at http://lyft.com/getapp/MD15M215." No. 2:14-CV-00421 MJP, 2016 U.S. Dist. LEXIS 195086, at *12 (W.D. Wash. Apr. 15, 2016). The defendant in that case – like Defendant here – argued that the message was not a commercial electronic message "because the $25 ride credit and the Lyft app itself are free, the text message does not 'promote real property, goods, or services for sale or lease.'" *Id*. at *13. In rejecting this argument, Judge Marsha Penchman concurred "with Judge Lasnik's analysis of a similar invitational offer" where Judge Lasnik reasoned:

> While the Taxi Magic app itself was... offered at no cost, the only purpose of the offer was to promote or encourage the use of defendants' taxi services... In addition, prohibiting unsolicited text messages that purport to offer a "free" download or link designed to

> result in future purchases comports with the legislative findings and
> intent in enacting CEMA.

*Id.* (quoting *Gragg v. Orange Cab Co.,* 145 F. Supp. 3d 1046 (W.D. Wash. 2015) (citing 2003 Wn. Legis Serv. 137 §1.)).

More recently, in *Gordon v. Robinhood Fin. Ltd. Liab. Co.,* Chief Judge Thomas Rice, held that the following message was sufficient on its face to state a claim under the CEMA: "Your free stock is waiting for you! Join Robinhood and we'll both get a stock like Apple, Ford, or Facebook for free. Sign up with my link."  No. 2:19-CV-0390-TOR, 2020 U.S. Dist. LEXIS 106229 (E.D. Wash. June 17, 2020) ("At this stage of the proceeding, Plaintiff alleges 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, the text message sent by Defendant advertised and promoted Defendant's curbside and delivery services.  Moreover, the text contained a link to Defendant's website where Defendant advertises various services and products.  Plaintiff's allegations – that the ultimate purpose of Defendant's text was to advertise and market its good and services – should be accepted over Defendant's unsupported characterization of the message.  The only purpose of Defendant's message was to increase sales.  This is supported by the fact that Defendant indiscriminately transmitted the same message to over 10,000 consumers in Washington alone.  Therefore, Defendant's Rule 12(b)(6) motion should be denied.

## C.  Defendant is not Entitled to Sanctions.

Defendant's characterization of Plaintiff's state court case as an attempt to "unreasonably and vexatiously" multiply proceedings is unfounded. Mot. at pg. 8. As discussed above, Plaintiff was legally permitted to file a separate state court action with a different cause of action without running afoul of the claim-splitting rule.  It was not until Defendant removed Plaintiff's state court action that any *potential* claims splitting issue arose.  Defendant's removal of Plaintiff's case was at least in-part an attempt to position itself so that it could seek sanctions against Plaintiff, a fact

demonstrated by Defendant's continued refusal to withdraw its Motion after this Court's consolidation of the cases.  *See Unigen Pharm., Inc. v. Walgreen Co.*, No. C07-0471RAJ, 2008 U.S. Dist. LEXIS 126436, at *7 (W.D. Wash. July 3, 2008) (noting that it is legally objectionable to lay a "sanctions trap").  In any event, because this Court has now consolidated the cases, Defendant's allegations of claim splitting are moot and sanctions are not warranted.

Defendant's citation to "comparable" cases where fees were awarded undermine its argument. Mot. at 9.  In *Hyytinen v. Morhous*, this Court awarded fees after a plaintiff lost at summary judgement and filed a new case against the same defendant with the exact same causes of action.  No. 14-5537, 2015 U.S. Dist. LEXIS 26654, at *8 (W.D. Wash. Mar. 3, 2015).  Here, unlike in *Hyytinen*, the pleadings in the federal case are not closed, let alone has there been a dispositive ruling, and Plaintiff's state court action and federal court action contain distinct causes of action. Defendant's other "comparable" case cite is equally unpersuasive and involve situations where a plaintiff knowingly pursued meritless and frivolous claims. *See Irving v. AMTRAK*, No. C13-5713 BHS, 2015 U.S. Dist. LEXIS 4023, at *4 (W.D. Wash. Jan. 12, 2015) (awarding fees after a plaintiff knowingly pursued a cause of action against the wrong defendant). Here, as discussed above, Plaintiff was well within his right to file a Washington state court action alleging violations of Washington state law exclusively on behalf of Washington consumers.

Although courts will sanction parties for attempting to circumvent court orders or missed deadlines, this is not one of those situations. For example, in *Anderson v. United Stationers Supply Co.*, the plaintiff, in effort to circumvent an order striking an untimely jury demand, filed a new identical case. No. 97-15631, 1998 U.S. App. LEXIS 7596, at *3 (9th Cir. Apr. 16, 1998).  The court levied monetary sanctions noting that "counsel's efforts to circumvent the order striking the jury demand unquestionably multiplied the proceedings before the district court." *Id*. at *4. Here, in stark contrast, there is no dispositive or scheduling order Plaintiff has attempted to circumvent. Plaintiff could have sought leave to add the CEMA claim to his pending federal case. *See also Inman v. Bank of Am.*, No. CV 14-2253 PA (SSx), 2014 U.S. Dist. LEXIS 159965, at *1 (C.D.

Cal. Nov. 13, 2014) (district court noting that plaintiff's "transparent" attempt to circumvent a scheduling order by dismissing an action and refiling the same case may result in the imposition of sanctions); *Williams v. Dep't of Corr.*, No. C13-5505 RJB, 2013 U.S. Dist. LEXIS 91543, at *4 (W.D. Wash. June 27, 2013) (warning a pro se plaintiff that further attempts to circumvent procedures for filing civil actions may result in sanctions). As such, because Plaintiff has not attempted to circumvent a court order or intentionally sought to multiply proceedings, sanctions are not warranted.

## V.    CONCLUSION

This Court should deny Defendant's Motion to Dismiss and request for sanctions, and allow Plaintiff's and the class members CEMA claims to proceed.

**WHEREFORE**, Plaintiff Charles Gabertan, respectfully requests an order denying Defendant's Motion to Dismiss, and such other relief deemed appropriate and equitable under the circumstances.

DATED: February 8, 2021

Respectfully Submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel Hiraldo, Esq.
(*pro hac vice*)
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
MHiraldo@Hiraldolaw.com
Telephone: 954-400-4713

**The Harbor Law Group** (WA SBN 51691)
Kira M. Rubel
Email: kira@theharborlawgroup.com
3615 Harborview Drive NW, Suite C
Gig Harbor, WA 98332-2129
Telephone: 253.251.2955

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
(*pro hac vice*)
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
(t) (305) 479-2299
(f) (786) 623-0915

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
(*pro hac vice*)
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

**<ins>CERTIFICATE OF SERVICE</ins>**

I hereby certify that I caused the forgoing document to be served on all parties of record via electronic transmission to all parties and attorneys of record.

Dated: February 8, 2021

By: *<ins>/s/ Manuel S. Hiraldo</ins>*
Manuel Hiraldo