UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLIE GABERTAN,

                Plaintiff,

  v.

WALMART, INC,

                Defendant.

CASE NO. C20-5520BHS

ORDER GRANTING MOTION TO DISMISS

THIS MATTER is before the Court on Defendant Walmart's Motion to Dismiss. Dkt. 44.[1] Also pending are Walmart's Motion to Stay Discovery pending the resolution of its Motion to Dismiss, Dkt. 46, and Plaintiff Charlie Gabertan's responsive Motion to Compel Discovery, Dkt. 53. The Court has reviewed the materials submitted and the remaining record. For the reasons below, Walmart's Motion to Dismiss is GRANTED and the remaining motions[2] are DENIED as moot.

---

[1] Walmart moved to Dismiss Gabertan's initial Complaint, but Gabertan amended his complaint in response. Dkt. 38. Walmart then filed a second motion to dismiss the operative complaint, which is the subject of this Order. Walmart's earlier motion, Dkt. 35, is **DENIED** as moot.

[2] Gabertan also asserted in state court a Washington Commercial Electronic Mail Act ("CEMA") claim, based on the same text message. Walmart removed that case here (Cause No.

ORDER - 1

# I. BACKGROUND

This is a putative Telephone Consumer Protection Act ("TCPA") class action. Gabertan alleges that on April 7, 2020, Walmart Pharmacy sent a single, unauthorized text message to his cell phone. The actual text is reproduced in Gabertan's Amended Complaint, and below:

> 851-66 >
>
> Text Message
> Today 3:39 PM
>
> WalmartRx - Are you 60+, high-risk, self-quarantining, or have COVID-19 symptoms? Use curbside pickup or have your Rx mailed. More info https://bit.ly/wmpharm

Dkt. 38 at 5.

Gabertan alleges that the text message's purpose was to promote Walmart's goods and services (including the link to the Walmart Pharmacy website). He thus alleges that the text was an advertisement, and that because he did not give Walmart his prior express written consent to receive it, the text message violated the TCPA. Gabertan seeks to represent a nationwide class of persons who received a similar text message. *Id.* at 8.

---

21–cv–5032 BHS–TLF) and the Court granted the parties' stipulated motion to consolidate it with this case. Dkt. 65. Walmart's separate Motion to Dismiss that claim, now Dkt. 69 in this case, will be addressed in a separate Order.

1  Walmart seeks dismissal under Rule 12(b)(6), arguing primarily[3] and most
2  persuasively that the text message was facially an informational communication made for
3  an emergency purpose, to which the TCPA does not apply.

## II.  DISCUSSION

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

---

[3] Walmart alternatively argues that the Court lacks specific personal jurisdiction over Walmart as to the claims of putative class members who do not reside in Washington. Dkt. 44 at 10, citing *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S.Ct. 1773 (2017). It also argues that the Court does not have subject matter jurisdiction over Gabertan's claim because TCPA § 227(b)(1)(A)(iii) was unconstitutional during the time its "government debt exception" was in effect. Dkt. 44 at 14 n.8 (citing *Creasy v. Charter Commc'ns, Inc*., No. 20-199, 2020 WL 5761117 (E.D. La. September 28, 2020)). The Supreme Court struck that exception as unconstitutional in *Barr v. American Association of Political Consultants*, 140 S.Ct. 2335 (2020). These arguments are not as persuasive, but the Court need not reach them.

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

Under the TCPA, it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA empowers the Federal Communications Commission to implement the Act through regulation, and courts have held that the FCC's regulations should be given "controlling weight." *Dennis v. Amerigroup Wash., Inc.,* No. 19–cv–5165RBL*,* 2020 WL 618472 at *3 (W.D. Wash. February 10, 2020) (*citing Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 WL 2378079, at *3 (N.D. Ill. June 1, 2017)). *See also CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449–50 (7th Cir. 2010)).

For automated calls involving advertisements or telemarketing, the FCC requires callers to "provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request." 47 C.F.R. § 64.1200(b)(3). In other words, the recipient must consent to receiving such calls. Furthermore, for telemarketing calls to cellular numbers under § 227(b)(1)(A)(iii), the FCC has specified that prior express consent must be *in writing*. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1839 (2012). This includes "so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012) (citing *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14097-98 (2003)). Although "purely informational messages" do not require written consent, prior consent is still required. *2012 Order*, 27 F.C.C. Rcd. at 1841–42; *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8022–23 (2015).

Calls or texts made for an emergency purpose, on the other hand, are exempt from the TCPA's prior consent requirements. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9054, 9062 (2016). The emergency purpose exception is to be interpreted broadly. *See In the Matter of the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 2736 (1992) ("[t]he legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly rather than narrowly."). As Judge Leighton of this District correctly explained in *Dennis*,

the FCC has interpreted the term "emergency purpose" to encompass "calls made necessary in any situation affecting the health and safety of consumers." *Dennis*, 2020 WL 618472 at *5 (citing 47 C.F.R. § 64.1200(f)(4)).

On March 20, 2020, in response to the COVID-19 pandemic, the FCC unilaterally issued a Declaratory Ruling. *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 35 FCC Rcd. 2840 (2020). The Ruling reiterated that calls or texts made for an "emergency purpose" are excepted from the TCPA, and that the exception is intended to apply in "instances that pose significant risks to public health and safety, and [where] the use of prerecorded message calls could speed the dissemination of information regarding . . . potentially hazardous conditions to the public." *Id*. at 2841, ¶ 4 (citations omitted). The FCC's Ruling acknowledged and relied on the President's (and many states' governors', including Washington's)[4] formal declaration of a state of emergency caused by the COVID-19 pandemic. It emphasized that even before the pandemic, it had "made clear that automated calls to wireless numbers made necessary by incidents of imminent danger including 'health risks' affecting health and safety are made for an emergency purpose and do not require prior express consent to be lawful." *Id*. at ¶¶ 5 and 6.

The FCC's Ruling further concluded that the COVID-19 pandemic is an imminent health risk, and that the TCPA does not prohibit health care providers from making

---

[4] Walmart's Fed. R. Evid. 201(b) Request for Judicial Notice of the President's, the Centers for Disease Control's, and the Governor's various COVID-19 Proclamations and Guidance, Dkt. 45, is **GRANTED**.

informational calls necessitated by it which are directly related to the pandemic's health risks to the public:

> We find that the current pandemic constitutes such an imminent health risk to the public. In determining whether a call relating to the COVID-19 pandemic qualifies as a call made for an emergency purpose, we look to the identity of the caller and content of the call. *First*, the caller must be from a hospital, or be a **health care provider**, state or local health official, or other government official as well as a person under the express direction of such an organization and acting on its behalf. *Second*, the content of the call must be **solely informational**, made necessary because of the COVID-19 outbreak, and ***directly related to the imminent health or safety risk arising out of the COVID-19 outbreak***.

*Id*. at ¶ 7 (bolded emphasis added) (citation omitted). Thus, it explained, a health care provider's informational call designed to inform and update the public regarding measures to address the pandemic would be made in a situation that "affects the health and safety of consumers" and would thus be exempt from the TCPA. *Id*. at ¶ 8 (citing 47 CFR § 64.1200(f)(4)).

The FCC compared such calls to advertising or telemarketing calls, like selling or promoting health insurance or a commercial grocery delivery service. Calls offering insurance or cleaning services in relation to the pandemic, in contrast to the emergency calls described above, are not made for an emergency purpose, and are not exempt from the TCPA. 35 FCC Rcd. at 2842, ¶ 9. The FCC concluded by warning "unscrupulous callers" not to view the pandemic or the Ruling as an opportunity to prey on virus-related fears:

> Unscrupulous callers should not view ***the relief we provide here*** as a retreat from our aggressive work to combat illegal robocalls. As the COVID-19 pandemic continues to impact the United States, phone scammers have seized the opportunity to prey upon consumers. We are aware that some

> consumers have already received telemarketing and fraudulent robocalls offering free home testing kits, promoting bogus cures, and preying on virus-related fears. We will be vigilant in monitoring complaints about these calls and will not hesitate to enforce our rules when appropriate.

*Id*. at ¶ 10 (emphasis added).

Walmart argues that its single text message[5] falls squarely within the TCPA's emergency purpose exception, as emphasized by the FCC's March 20, 2020 Declaratory Ruling. The Walmart Pharmacy is a health care provider,[6] and its message was facially designed to, and did, inform its customer that he could arrange to pick up his prescription curbside, or to have the pharmacy mail it, rather than going in to the pharmacy counter to pick it up as he normally would. It argues the text facially does not offer anything for sale, and it does not solicit new business; its sole purpose was to inform its customer about the coronavirus and available mitigation efforts (stay at home, social distancing) espoused by federal and state health authorities.

Gabertan argues that the FCC's March 2020 guidance "carved a very narrow exception" for a "limited set" of pandemic-related communications. Dkt. 47 at 13. He suggests the FCC issued its Ruling out of fear that companies like Walmart would use to pandemic to profit on consumers' fears, and that the Ruling's purpose was to caution them that "only a limited scope of communications 'truly necessary because of COVID-

---

[5] Walmart emphasizes that Gabertan does not (and cannot) allege that he was not the text's intended recipient, that he was not a Walmart Pharmacy customer with an active prescription, or that he did not give Walmart his phone number. Dkt. 44 at 1.

[6] See *Bailey v. CVS Pharmacy, Inc.*, No. 17-11482, 2018 WL 3866701, at *5 (D.N.J. Aug. 14, 2018) (a pharmacy is a health care provider) (citations omitted). Gabertan does not argue that Walmart Pharmacy is not a health care provider.

19 outbreak, and directly related to the imminent health or safety risk arising out of the COVID-19 pandemic' would be permitted under the Ruling," and the TCPA. *Id.* at 16.

The Ruling itself undermines at least the latter claim. The FCC characterized its Ruling as "providing relief" from the TCPA's reach for callers, not call or text recipients, and the goal was plainly to permit health care providers to disseminate emergency health information without triggering TCPA class action liability. And even before its March 2020 Ruling, the FCC had held that the TCPA's emergency exception was to be interpreted *broadly*; it was not and is not a "very narrow" exception, as Gabertan advocates. *Dennis*, 2020 WL 618472 at *5 (citations omitted).

Gabertan argues that Walmart's text message was facially an advertisement, akin to one promoting a commercial grocery delivery service. Dkt. 47 at 16. He argues that to qualify under the emergency exception, a call or text "must be about a bona fide emergency that is relevant to the called party." Dkt. 47 at 13 (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 FCC Rcd. 9054, 9063 n.76 (2016)). But unlike a hypothetical retailer advertising grocery delivery, the defendant pharmacy here is a health care provider, providing information to its customer about safe access to prescription medications during the pandemic. The pandemic is a bona fide emergency, and information about how to obtain prescription medications without exposing oneself to COVID-19 is relevant to the public, including the defendant pharmacy's customer, Gabertan.

Gabertan claims Walmart contends that "any communication remotely related to prescription medication falls within the exception because it concerns the health and

safety of consumers." Dkt. 47 at 13 (citing Dkt. 44 at 3). He then argues that at least two district courts, *Dennis* and *Smith v. Rite Aid Corp*, No. 17-CV-6044 CJS, 2018 WL 5828693 (W.D.N.Y. Nov. 7, 2018), have rightly rejected this claim.

There are two problems with this argument. First, this is not an accurate summary of Walmart's position, and the Court need not adopt that unwarranted reading of the TCPA (or the Declaratory Ruling) to determine that the text Walmart sent to Gabertan was exempt. Second, Gabertan's characterization does not address the context of this case. Walmart's text was far more than "remotely related" to prescription medications; it was *only* about prescriptions, and how its customers could safely continue to obtain them during the COVID-19 emergency.

Neither *Dennis* nor *Smith* is precedent for concluding that the text at issue here was not made for an emergency purpose. Both pre-date the FCC's March 2020 ruling (and the pandemic), and both involved multiple calls over time, to a wrong (or re-assigned) number.

*Dennis* involved seven pre-pandemic pre-recorded phone calls and texts, placed by Amerigroup, an insurance company that administers private Medicaid benefits plans paid for by the state. The calls were placed to Dennis's cell phone number in error. The calls included a "benefit retention call," reminding insured recipients to renew their coverage, *Dennis*, 2020 WL 618472 at *1-2, "health screening calls," designed to assist Amerigroup to "better understand their members' health care needs," *id*. at * 2, and a "prescription benefit alert," which was a back-up reminder that it had sent out a new member ID card, needed for picking up prescriptions. *Id*.

1      Judge Leighton confirmed that the TCPA's emergency exception was to be
2 construed broadly, *id*. at *5, and that calls "'involving an attempt to confirm or refill a
3 prescription order, schedule a prescription delivery, or confirm that a prescription is on its
4 way'" fell within the emergency exception. *Id*. at *6 (quoting *Roberts v. Medco Health
5 Solutions, Inc*., No. 15–cv–1368 CDP, 2016 WL 3997071, at *3 (E.D. Mo. July 26,
6 2016)). He held that the "prescription benefits alert" and the "health screening calls" were
7 not "necessary" under the emergency exception. *Id*. But because of the myriad negative
8 implications of a lack of health insurance, the recipient's impending lapse in coverage
9 made the benefit retention call necessary and within the emergency exception as a matter
10 of law. *Id*. at *7. Walmart argues persuasively that its text is more akin to the "benefit
11 retention call" than to the "health screening calls" at issue in *Dennis*.

12      *Smith* involved multiple calls per week, and sometimes multiple calls per day,
13 reminding the intended recipient that her prescription was ready for pick up. *Smith*, 2018
14 WL 5828693 at *1. The district court rejected the caller's claim that the calls were
15 necessary and exempt under the TCPA's emergency exception. To the extent *Roberts*
16 would lead to the conclusion that such calls were necessarily of an emergent nature, the
17 *Smith* Court disagreed with it. The Court denied Rite Aid's motion to dismiss on that
18 basis. *Id*. at *5.

19      These authorities do not address the pandemic or the FCC's March 2020 Ruling.
20 That Ruling specifically held that health care providers like the Walmart Pharmacy can
21 "communicate information about the novel coronavirus as well as mitigation measures
22 without violating federal law." 35 FCC Rcd. at 2840. Curbside pick-up and mailing

prescriptions—contactless access to prescriptions as part of an effort to mitigate the pandemic's health risks—are facially, squarely within the emergency exception as articulated in the Ruling.

Gabertan's claim that he did not face "death or serious injury" in the absence of access to his prescription thus misses the point. The information provided was about how to access even optional prescription medications in the context of a pandemic threatening the public, including Gabertan. The emergency was the pandemic, not the content of the prescription. Thus, Gabertan's allegation that the text was not "necessary to protect his health or safety," and his conclusory claim that the purpose of the text was to "promote Walmart's goods and services . . . and drive business to its pharmacies" are insufficient to overcome the Ruling's facial application to the text he received.

Nor is Gabertan's repeated characterization of the text as an "advertisement" enough to make it so; the text facially did not advertise or promote anything other than a way to safely access prescriptions. This conclusion is not altered by the text's inclusion of a "link" to the Walmart Pharmacy website.

Walmart argues persuasively that such a link, without more, does not render a message adverting or telemarketing. Dkt. 49 at 9 (citing *AnPhan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257 (N.D. Cal 2018), *aff'd* 798 Fed. App'x 157 (9th Cir. 2020); *Vallianos v. Schultz*, No. 19–cv–0464 JCC, 2019 WL 4980649 at *3 (W.D. Wash. Oct. 8, 2019) ("the mere inclusion of a link to a website on which a consumer can purchase a product does not transform the whole communication into a solicitation") (citing *AnPhan*)). Walmart argues that the link in its text message offered no goods or services;

it instead provided additional information about how its customers could access active prescriptions. *Id.* at 10.

Finally, Gabertan argues that the TCPA's emergency exception is an affirmative defense upon which Walmart bears the burden of proof, making its application in the context of a motion to dismiss inappropriate. Dkt. 47 at 13 n.2 (citing *Smith*, 2018 WL 5828693 at *4 ("a Rule 12(b)(6) Motion to dismiss cannot be granted unless it is clear from the face of the pleading that the claim is barred as a matter of law."))

The entirety of text at issue is presented on the face of Gabertan's complaint. There is no contextual nuance, or disputed fact, related to the text, its content, or its purpose. It is clear from the face of the pleading that the single, informational text message Walmart sent to Gabertan falls squarely within the TCPA's emergency exception, particularly as explained by the FCC's March 2020 Declaratory Ruling. Its sole purpose was to provide information to its customer about the pandemic and its health and safety risks, and how to mitigate those risks, and was not an advertisement. It is exempt from the reach of the TCPA, as a matter of law.

Walmart's Motion to Dismiss Gabertan's TCPA claim, Dkt. 44, is **GRANTED**, and that claim is **DISMISSED** with prejudice.

IT IS SO ORDERED.

Dated this 5th day of March, 2021.

BENJAMIN H. SETTLE
United States District Judge